UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62378-BLOOM/Valle

**VIRGINIA PICCIRILLO**,

    Plaintiff,

v.

**CITY OF PEMBROKE PINES**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants' Motions to Dismiss, ECF Nos. [21], [22], and [36] ("Motions"), Plaintiff's Second Amended Complaint, ECF No. [20] ("Amended Complaint" or "Am. Compl."). The Court has reviewed the Motions, all supporting and opposing filings, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, Counts I, II, III, IV, and V of the Amended Complaint survive Defendants' Motions as asserted against the City of Pembroke Pines, as well as Count VII for liability of Kevin D. Burgs.

### I. Background

On December 22, 2015, Plaintiff Virginia Piccirillo ("Plaintiff" or "Piccirillo"), filed her Amended Complaint, asserting claims against Defendants City of Pembroke Pines (the "City"), Pembroke Pines Police Department (the "PD"), and Kevin D. Burgs ("Burgs," together with the City and the PD, "Defendants") for sexual discrimination and retaliation pursuant to federal and state statute.[1] The City hired Plaintiff as a Police Support Specialist with the PD in March 2010,

---

[1] Plaintiff represents that she has exhausted the requisite administrative remedies. Am. Compl. ¶ 5.

alongside Burgs, a police officer with the PD. Am. Compl. ¶¶ 7-11. Subsequently, Plaintiff became a Police Service Aide. *Id.* ¶ 13.

The instant controversy arises from a romantic relationship between Plaintiff and Burgs, which lasted from approximately October 2010 until January 2012. *Id.* After Plaintiff ended the relationship, according to the Amended Complaint, Burgs began exhibiting dangerous, aggressive behavior, including stalking and assaulting Plaintiff. *Id.* ¶¶ 14-15. One such incident occurred when Plaintiff was returning home from travel, the purpose being "to put some space between herself and Burgs," and found Burgs waiting inside her apartment. *Id.* ¶ 16. The Amended Complaint alleges that Burgs then sexually assaulted her. *Id.*[2]

Burgs' "extreme" conduct also caused Plaintiff to move several times. *Id.* ¶ 18. However, Plaintiff alleges that, whenever she moved, Burgs used the PD's confidential systems to investigate her new whereabouts. *Id.* ¶ 19. After locating her, Burgs resumed his stalking behavior. *Id.* ¶18. Plaintiff eventually moved into her mother's home, because her mother lived in a gated community which she believed would provide needed protection against Burgs. *Id.* ¶ 20. Nonetheless, Burgs continued to stalk Plaintiff – oftentimes, while he was on duty for the PD. *Id.*

She reported these incidents[3] to her supervisor, the Captain of the PD. *Id.* ¶¶17, 21. Originally, the Captain moved Burgs to a different team, the burglary surveillance unit. *Id.* ¶ 21. In this unit, Burgs "was unsupervised on Fridays and had access to multiple unmarked/undercover vehicles[,] which he used to continue to stalk Plaintiff." *Id.* After

---

[2] After this assault, Plaintiff watched Burgs drive away in a PD vehicle. *Id.*
[3] According to Piccirillo, by making these complaints in good faith, Plaintiff engaged in protected activity for which retaliation is forbidden pursuant to Fla. Stat. 760.10(7), which states "It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this Section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Section." *Id.* ¶ 28.

Plaintiff complained several additional times, she was instructed not to reveal her complaints to human resources and was promised that the PD's internal affairs department would conduct an investigation into Burgs' conduct. *Id.* ¶¶ 22-23. However, Plaintiff avers that the department failed to take any additional action. Eventually, the Captain told Plaintiff just to "deal with it." *Id.* ¶ 24. "Ultimately, Plaintiff was constructively discharged, as she had no choice but to resign [from] her employment on December 29, 2013, because her working conditions had become intolerable due to the continued harassment, retaliation[,] and stalking by Officer Burgs and the police department's refusal to remedy the situation."[4] *Id.* ¶ 25.

In total, the Amended Complaint alleges seven separate counts: (1) sex discrimination against the City and PD pursuant to Florida statute; (2) retaliation against the City and PD pursuant to Florida statute; (3) violation of 42 U.S.C. § 1983 against the City and PD; (4) sex discrimination against the City and PD pursuant to Title VII; (5) retaliation against the City and PD pursuant to Title VII; (6) stalking against Burgs; (7) battery against Burgs. Plaintiff alleges that as a direct and proximate result of the unlawful actions alleged by Defendants, she has suffered damages and will continue to suffer injury and damages in the future, including, but not limited to, loss of past and future income, stress, anxiety, and emotional distress. *Id.* Accordingly, she seeks reasonable attorney's fees, costs, and expenses, declaratory relief, injunctive relief, front pay, in lieu of reinstatement, back pay, interest, and damages for lost employment benefits, as well as compensatory, consequential, and punitive damages for mental anguish and humiliation.

Specifically, pursuant to Count I, Piccirillo alleges that the City and the PD "discriminated against Plaintiff in the terms and conditions of her employment, up to and

---

[4] Upon information and belief, no male employees of the City or the PD, specifically, were stalked, denied protection, or assaulted by a co-worker. Moreover, Defendants did not ignore complaints made by male employees nor did they force any such male employee to resign. *Id.* ¶ 26.

3

including constructive termination, because of her sex (female)." *Id.* ¶ 33. The tolerance of Burgs' misconduct and the City's failure to address it, according to Plaintiff, constitute intentional and unlawful discrimination based on sex in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10, *et seq.* (the "FCRA"). *Id.* ¶¶ 34-35. Count II of the Amended Complaint alleges that the City and the PD unlawfully retaliated against her, pursuant to the FCRA, through discrimination in the terms and conditions of her employment, which led to her constructive termination. *Id.* ¶¶ 38-43. Counts IV and V of the Amended Complaint mirror Counts I and II for sex discrimination and retaliation, but, pursuant to these facts, allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against the City and the PD. *Id.* ¶¶ 59-62. Ultimately, Plaintiff alleges that the Defendants' acts and omissions, as set forth herein, created a sexually hostile and abusive work environment, which culminated in adverse employment action to the Plaintiff, to wit, her constructive termination. *Id.* ¶¶ 59-71.

Plaintiff alleges violation of 42 U.S.C. § 1983 against the City and the PD in Count III of the Amended Complaint. By allowing Burgs to effectuate an illegal search on the police department's confidential systems, discover Plaintiff's new home address, and subsequently hold Plaintiff against her will, Defendants violated Plaintiff's constitutional rights through the acts of their agent, Burgs – specifically, Plaintiff's right to freedom from unreasonable search and seizure, pursuant to the Fourth Amendment, as well as her liberty interest under the Fourteenth Amendment of the United States Constitution. *Id.* ¶¶ 44-47, 50-52. Burgs acted under color of the law, within the meaning of 42 U.S.C. § 1983, and his actions are imputable to Defendants. *Id.* ¶ 49. Furthermore, Plaintiff avers that it is the policy and practice of the City and the PD to tolerate a pattern of misconduct by an individual under their employ. *Id.* ¶¶ 53-56. Finally, in connection with Burgs' above-alleged behavior, the Amended Complaint contains allegations

against Burgs for stalking in Count VI, pursuant to Fla. Stat. § 784.048, and battery in Count VII. *Id.* ¶¶ 72-82.  Defendants now seek to dismiss all claims.

**II. Legal Standard**

Rule 8 of the Federal Rules requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."). Accordingly, a court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the

complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). However, although a court is required to accept all of the allegations contained in the complaint and exhibits attached to the pleadings as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). The Supreme Court was clear that courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Through this lens, the Court addresses the instant Motion.

### III. Discussion

#### A. The PD's Motion to Dismiss

In the PD's Motion to Dismiss, ECF No. [21] ("PD's Motion"), the PD argues that it does not have a legal existence apart from the City and, thus, is not subject to suit. *See, e.g.*, *Williams v. Miami-Dade Police Department*, 297 F. App'x 941, 945 (11th Cir. 2008) ("Under Florida law, police departments are not legal entities amenable to suit."). In Plaintiff's response, she consents to the granting of the PD's Motion to Dismiss. *See* ECF No. [34]. Accordingly, the Court dismisses all claims asserted against the PD with prejudice.

#### B. The City's Motion to Dismiss

In its Motion to Dismiss, the City argues that all of Plaintiff's claims are defective: "while Plaintiff summarily claims that she was 'discriminated against' and 'retaliated against,' Plaintiff fails to allege any adverse employment action." ECF No. [22] (the "City's Motion") at 1-2. Additionally, it argues that Plaintiff's civil rights claim against the City must fail as Piccirillo has not alleged an official policy or custom of the City that caused Plaintiff's alleged constitutional deprivation. Plaintiff opposes the relief requested by the City, arguing that she has sufficiently pled both claims, *see* ECF No. [33], and the Court agrees with the Plaintiff.

### 1. Sex Discrimination and Retaliation under the FCRA and Title VII (Counts I, II, IV, and V)[5]

Title VII of the Civil Rights Act of 1964 makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment can constitute discrimination based on sex for purposes of Title VII. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244-45 (11th Cir. 1999) (*en banc*). To demonstrate sexual harassment, Piccirillo must show: (1) that "she belongs to a protected group;" (2) that she "has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature;" (3) that the harassment was "based on [her] sex . . .;" (4) "that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment;" and (5) "a basis for holding the employer liable." *Mendoza*, 195 F.3d at 1245. Defendants only dispute the fourth factor here.[6] Therefore, under these circumstances, the question posed is whether Plaintiff has alleged sufficiently severe harassment such that it created a discriminatorily abusive working environment.

Harassment is severe or pervasive for Title VII purposes only if it is both subjectively and objectively severe and pervasive. *Mendoza*, 195 F.3d at 1246. "Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and

---

[5] Claims under the FCRA are analyzed in the same manner as claims brought under Title VII. *See Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000); *Wilbur v. Corr. Services Corp.*, 393 F.3d 1192, 1195 n. 1 (11th Cir. 2004). Therefore, in this analysis, the Court does not distinguish between the two statutes.

[6] Because the City does not contest its liability for Burgs' actions, the Court refrains from analyzing the relevant agency principles. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Llampallas v. Mini-Circuits, Lab., Inc.*, 163 F.3d 1236, 1247 (11th Cir. 1998).

pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment to be severe and pervasive." *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000). "When determining whether harassment is objectively severe and pervasive, courts consider 'the frequency of the conduct,' 'the severity of the conduct,' 'whether the conduct is physically threatening or humiliating, or a mere offensive utterance,' and 'whether the conduct unreasonably interferes with the employee's job performance.'" *Id.* (quoting *Mendoza*, 195 F.3d at 1246).

There can be no doubt that Piccirillo subjectively perceived Burgs' behavior as harassing. *See id*. To determine whether the harassment was objectively severe and pervasive, the Court turns to the four factors relevant to that analysis. First, the conduct alleged by Plaintiff was not infrequent. She describes Burgs' unwanted stalking, sexual advances, and other harassment, including assault on at least one occasion, as "ongoing," "continuous," "repeated" behavior, and notes that it caused her to move several times over the course of two years. Am. Compl. ¶¶ 15, 40, 68, 70, 72, 77. Addressing the second and third factors together, the conduct was severe, physically threatening, and humiliating, as exemplified by the incident alleged in the Amended Complaint in which Burgs broke into Piccirillo's apartment and sexually assaulted her. Finally, the conduct interfered with her job performance as the threat that Burgs posed caused Plaintiff stress, anxiety, humiliation, and other emotional distress. *See id.* ¶¶ 41-43, 63-65.

Therefore, "[t]he Court 'cannot say that [Piccirillo] could prove no set of facts consistent with her allegations[,]' which would amount to a hostile work environment." *Melendez v. Town of Bay Harbor Islands*, 2014 WL 6682535, at *3 (S.D. Fla. Nov. 25, 2014) (quoting *Lewis v. Bd. of Trustees of Ala. State Univ.*, 874 F. Supp. 1299, 1304 (M.D. Ala. 1995)). Albeit lacking in

detail, these allegations, taken as true, are akin to a "continuous barrage of sexual harassment," which has been held sufficient under Title VII. *Dees v. Johnson Controls World Servs., Inc.*, 168 F.3d 417, 418 (11th Cir. 1999). Accordingly, Plaintiff has sufficiently stated claims for discrimination on the basis of sex pursuant to the FCPA and Title VII. Thus, Counts I and IV survive the City's Motion.

> Title VII also provides that:
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (1982). Pursuant to Counts II and V, to successfully allege a claim for retaliation, a plaintiff must show that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (*per curiam*). Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment. *See, e.g.*, *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) ("[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures.").

The City asserts that Piccirillo has not established the second prong of retaliation, under either Title VII or the FCPA doctrine, because the Amended Complaint fails to allege an adverse employment action. "To prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the

9

significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239-40 (11th Cir. 2001); *see also Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir. 2004). Conduct falling short of an ultimate employment decision must, in some substantial way, "alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (citation omitted).

Plaintiff alleges that her constructive discharge was the adverse employment action under these facts. A "[c]onstructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (internal marks omitted), *cert. denied*, 130 S. Ct. 1536 (2010). Working conditions must be objectively "unbearable" such that "a reasonable person in that person's position would be compelled to resign." *Id.* (internal marks omitted). The standard for proving a constructive discharge is "more onerous" than that required to prove a hostile work environment. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (holding that being berated in public was not sufficient to show constructive discharge). *Compare Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977-78 (11th Cir. 2003) (being reprimanded and hearing from coworkers of management's intent to fire were insufficient to show constructive discharge) and *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001) (receiving poor evaluations was not sufficient to establish constructive discharge) with *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1015 (11th Cir. 1994) (holding court's finding of constructive discharge was supported by evidence of plaintiff being placed on

10

probation, receiving unjustified work evaluations, and being repeatedly screamed at so that supervisor's "spit was flying in [plaintiff's] face") and *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 552 (11th Cir. 1997) (holding that summary judgment for defendants was inappropriate where plaintiff was relieved of all responsibilities and was given a chair with no desk, and other employees were instructed not to speak to her).

In its reply to the Motion, the City argues that Plaintiff has not alleged conduct that would lead a reasonable person to believe that the alleged harassment objectively altered the terms or conditions of her employment. *See* ECF No. [37] at 3-4. However, the cases it cites are distinguishable, because none involve physical altercations of the sort alleged in the instant action. *See Mendoza*, 195 F.3d at 1244 (rejecting hostile work environment claim where the incidents of harassment "in the minds of a reasonable juror or to a reasonable person, are not physically threatening or humiliating"); *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 807-808 (11th Cir. Feb. 3, 2012) (rejecting hostile work environment claim where evidence showed that plaintiff did not feel physically threatened as a result of defendants' conduct); *Scott v. Pizza Hut of America, Inc.*, 92 F. Supp. 2d 1320, 1326 (M.D. Fla. 2000) (rejecting hostile work environment claim where none of the complained-of acts were physically threatening or humiliating).

In contrast, Piccirillo alleges that she was continually harassed *and assaulted* by an employee of the City while he was on duty working for the City, and was forced to resign because the City refused to remedy the situation. Although the majority of the complained-of physical behaviors appear to have taken place outside of the office, courts consider such off-campus actions when weighing claims for constructive discharge. *See, e.g.*, *Rosenbaum v. S. Manatee Fire & Rescue Dist.*, 980 F. Supp. 1469, 1473-74 (M.D. Fla. 1997) (refusing to grant

11

summary judgment to defendant on constructive discharge claim where plaintiff's supervisor repeatedly called her at home when she was out sick and followed plaintiff on her lunch break). Accordingly, while it may be unclear from the Amended Complaint just how many verbal and physical assaults or instances of other discriminatory conduct Plaintiff experienced, the allegations are sufficient at the pleading stage. Discovery will bring these specific facts to light. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002) ("Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."); *Okwen v. American Maritime Officers Plans*, 2015 WL 5320882, at *4 (S.D. Fla. Sept. 14, 2015) (quoting same).

### 2. Civil rights violation pursuant to 42 U.S.C. § 1983

Any person acting under color of state law who violates a constitutional right of another is liable for the injured party's losses. *See* 42 U.S.C. § 1983. "Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury th[en] the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "A plaintiff . . . has two methods by which to establish a [municipal actor's] policy: identify either (1) an officially promulgated [ ] policy or (2) an unofficial custom or practice of the

county shown through the repeated acts of a final policymaker for the [municipal actor]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).[7]

"To establish a policy or custom, it is generally necessary to show a persistent and widespread practice[; h]owever, the custom need not receive formal approval." *Depew*, 787 F.2d at 1499 ("Random or isolated incidents are insufficient to establish a custom or policy."); *see also Smith v. Mercer*, 572 F. App'x 676, 679 (11th Cir. 2014) ("A plaintiff must identify a 'consistent and widespread practice' of constitutional deprivations to prove local government liability for an unofficial custom."); *Carter v. Columbus Consol. Gov't*, 559 F. App'x 880, 881 (11th Cir. March 18, 2014) ("[T]he challenged practice or custom must be 'so pervasive as to be the functional equivalent of a formal policy'") (quoting *Grech*, 335 F.3d at 1330 n. 6). "In addition, . . . a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001) (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). "Prior incidents also must involve facts substantially similar to those at hand in order to be relevant to a deliberate-indifference claim." *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (citing *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)).

Plaintiff's allegations paint a picture of deliberate indifference on the part of the City towards Burgs' egregious misconduct. Piccirillo made "repeated complaints," Am. Compl. § 40, to the Captain of the PD regarding the ongoing harassment she faced; yet, Defendant "failed to

---

[7] Piccirillo focuses on the "policy" claim, addressed below. The parties' competing submissions contain some discussion about a "failure to train" claim, another method by which a plaintiff can establish liability of a municipal actor. However, as Plaintiff points out, the Amended Complaint does not mention the word, "train," even once, in its entirety. ECF No. [33] at 13. Plaintiff half-heartedly asserts an argument for a "failure to train" claim in her response. *Id.* at 13-14. Nevertheless, the Court will not read into the Amended Complaint a claim that Plaintiff concedes was not originally intended.

rectify the situation. Therefore, the City had knowledge of improper police conduct, but failed to take proper remedial action." *Depew*, 787 F.2d at 1499. Plaintiff's complaints to the City relayed descriptions of several incidents involving the use of unreasonable search and seizure and violation of her liberty interest by Burgs. Specifically, the Amended Complaint alleges, *inter alia*, that that City allowed Burgs to "use police department and city resources and equipment, unregulated, to access otherwise private information, and to utilize the resources and equipment to commit illegal actions, and to further violate [Piccirillo's] constitutional rights." Am. Compl. ¶ 45. Plaintiff complained to the City a number of times, and was instructed not to reveal her complaints to human resources and to just "deal with it." *Id.* ¶¶ 22-24. "Therefore, the city had knowledge of improper police conduct, but failed to take proper remedial action. The continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983." *Depew*, 787 F.2d at 1499 (citing *Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir. 1981); *Turpin v. Mailet*, 619 F.2d 196 (2d Cir.), *cert. denied*, 449 U.S. 1016 (1980)).

These allegations are sufficient at the pleadings stage. The Court will allow Piccirillo to further develop this claim through discovery. *See Jarrell v. Geo Grp., Inc.*, 2011 WL 5357630, at *4 (M.D. Fla. Oct. 31, 2011) (denying motion to dismiss where complaint alleged policy or custom substantiated only by individual defendant's experience); *Doe v. Faerber*, 446 F. Supp. 2d 1311, 1317 (M.D. Fla. 2006) (finding that plaintiff sufficiently stated section 1983 claim based on repeated incidents involving only the individual plaintiff); *Congleton v. Gadsden Cnty., Fla.*, 2011 WL 2174350, at *4 (N.D. Fla. June 1, 2011) (same); *cf. Larosa v. City of Sweetwater*, 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (dismissing complaint which "offer[ed] no factual allegations other than [plaintiff's] own arrest and the circumstances surrounding that

14

arrest" to substantiate allegations of a policy or custom). Accordingly, Count III of the Amended Complaint survives the City's Motion to Dismiss.

### C.  Burgs' Motion to Dismiss

In his Motion to Dismiss, Burgs argues that both claims asserted against him for stalking and battery are insufficiently pled. ECF No. [36] ("Burgs' Motion") at 1. Specifically, he argues that Florida law does not allow a civil cause of action for violations of criminal statutes unless explicitly stated otherwise – and neither the stalking nor battery statutes are included among the exceptions. *Id.* at 2 (citing Fla. Stat. § 772.102). As to the battery claim, in the alternative, Burgs argues that Piccirillo's allegations do not sufficiently allege the required elements. Plaintiff concedes to Defendant's argument regarding Count VI for stalking. *See* ECF No. [40] (Plaintiff's Response) at 2 ("[Burgs] is correct, and Count VI may be dismissed."). Count VI of the Amended Complaint for stalking against Burgs is, therefore, dismissed.

As to Count VII, Am. Compl. ¶¶ 77-82, Plaintiff counters that she can sustain a civil cause of action for battery and that she has sufficiently alleged a prima facie case thereunder. "In Florida, '[b]attery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent.'" *Medina v. United Christian Evangelistic Ass'n*, -- F. Supp. 2d --, 2009 WL 653857, at *2-3 (S.D. Fla. March 10, 2009) (quoting *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005)); *see* Fla. Stat. § 784.03 (1991) (stating elements of battery as "actually and intentionally touching or striking another person against the will of that person.").

The Court finds *Carter v. University of South Alabama Children's & Women's Hosp.*, 510 F. Supp. 2d 596, 617 (S.D. Ala. 2007), instructive. As Burgs points out in his reply to the Motion, ECF No. [42] at 2, the allegations in *Carter* were certainly more colorful than those

present in this action. *See id.* at 601 ("[S]he was standing in the hallway talking to her nursing supervisor . . . on the telephone when [defendant] walked by, rubbing his midsection against her buttocks for several seconds as he did so."). Faced with these explicit facts, when analyzing plaintiff's claim for battery on a motion for summary judgment, the Court in *Carter* found that "[a]t a bare minimum, this creates a jury question as to whether [defendant] intentionally touched Carter in an offensive manner that had sexual overtones and was unwelcome." *Id.* at 617.

In contrast, here, the Court has been provided with less factual enhancement as to the nature or manner of the contact alleged. Nevertheless, whatever the particulars, Plaintiff has claimed that the contact amounted to sexual assault without consent. *See* Am. Compl. ¶¶ 16, 79-81. Plaintiff alleges that Burgs acted with the intent to make harmful contact with her person and that he succeeded in injuring her. *Id.* ¶ 82. Thus, although far *less* detailed, the contact alleged here is actually far *more* serious than that alleged in *Carter*. Piccirillo has, therefore, sufficiently alleged a claim for battery against Burgs. *See, e.g.*, Sce*lta v. Delicatessen Support Servs.*, Inc., 57 F. Supp. 2d 1327, 1358 (M.D. Fla. 1999) (denying motion to dismiss battery claim where defendant was "alleged to have committed an actual and intentional touching, against the will of [p]laintiff").

**IV. Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The PD's Motion to Dismiss, **ECF No. [21]**, is **GRANTED**. All claims asserted against the PD in the Amended Complaint are dismissed with prejudice.

2. The City's Motion to Dismiss, **ECF No. [22]**, is **DENIED**. All claims asserted against the City in the Amended Complaint survive the City's Motion.

3. Burgs' Motion to Dismiss, **ECF No. [36]**, is **GRANTED IN PART AND DENIED IN PART**. Count VI, for stalking, is dismissed. Count VII, for battery, survives.

4. The City and Burgs shall file their answers to the surviving claims in the Amended Complaint, **ECF No. [20]** (Counts I, II, III, IV, V, VII), no later than **March 28, 2016.**

**DONE AND ORDERED** in Miami, Florida, this 14th day of March, 2016.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

cc:   counsel of record